**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|                          |   :   |                    |
|--------------------------|-------|--------------------|
| JOHN LEBRON,             |   :   | CIVIL ACTION       |
|           Petitioner     |   :   |                    |
|                          |   :   |                    |
|                          |   :   |                    |
|       v.                 |   :   | NO. 11-7115        |
|                          |   :   |                    |
| SUPT. GERALD ROZUM,      |   :   |                    |
|           Respondent     |   :   |                    |

_____

**Henry S. Perkin, M.J.**                                **August 10, 2012**

## REPORT AND RECOMMENDATION

Presently before the Court is a Petition for Writ of Habeas Corpus filed by the

Petitioner, John Lebron ("Petitioner"),[1] pursuant to 28 U.S.C. section 2254.  Petitioner is

currently incarcerated in the State Correctional Institution in Somerset, Pennsylvania.  For the

reasons that follow, it is recommended that the Petition as it pertains to MC-51-CR-0444561-

2001 should be denied without prejudice and dismissed without an evidentiary hearing.  It is

further recommended that the Petition as it pertains to CP-51-CR-1105911-2001 and CP-51-CR-

1110311-2002 should be denied with prejudice and dismissed without an evidentiary hearing.[2]

---

[1]        As correctly noted by Respondent, Petitioner's surname has been spelled Lebron, Lebrom,
Lebrum, Lebran, Lebram, Labrom and Labron in his many cases.  His first name has been given as John, Jonathan,
and Johnathan.  In letters sent to the Court by Petitioner, he attaches a copy of a Certificate of Birth identifying
himself as Jonathan Lebron Crespo and a copy of a Social Security card identifying himself as Jonathan Lebron.

[2]        Petitioner challenges three state cases in one federal habeas Petition.  Although this is improper,
the undersigned will, nevertheless, address each of the state cases in this Report and Recommendation.

# I.     PROCEDURAL HISTORY.[3]

## A.     MC-51-CR-0444561-2001.

On May 2, 2001, Petitioner and a sixteen-year-old cohort were arrested for stripping an automobile.  Petitioner entered into a negotiated guilty plea on November 11, 2001 and was sentenced to an aggregate two year term of probation by the Honorable Tama Myers-Clark on February 20, 2002.[4]  While serving this probationary sentence, Petitioner was arrested on October 24, 2002 in a separate but similar automobile theft case which resulted in a direct violation of his probation ("VOP").  As a result, on February 17, 2004, his probation was revoked, and he was sentenced to an aggregate term of 7½ to 15 years imprisonment.

Petitioner filed a direct appeal with the Pennsylvania Superior Court, contending that the trial court imposed an excessive sentence.  By memorandum decision filed January 20, 2006, the Superior Court denied Petitioner's direct appeal and affirmed the judgment of sentence.[5]  Commonwealth v. Lebron, 895 A.2d 648 (Pa. Super. 2006)(table); Response, Ex. A. Petitioner did not seek further review.

On August 31, 2006, Petitioner filed a timely and counseled petition pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA").  See 42 Pa. C.S.A. §§ 9541, et seq.  In

---

[3]     This information is taken from the Petition for Writ of Habeas Corpus, the Response thereto, and the attachments to those pleadings.  In addition, this Court ordered and reviewed the state court records pertaining to this matter.  The information contained in the state court records has been considered and incorporated into this Report and Recommendation.

[4]     Petitioner was also separately convicted and sentenced for contempt when he initially failed to appear for his sentencing.

[5]     More specifically, the Superior Court found that counsel had not preserved a challenge to the discretionary aspect of sentencing.  Commonwealth v. Lebron, 895 A.2d 648 (Pa. Super. 2006)(table); Response, Ex. A at 4.  Even assuming, however, that counsel had preserved the issue for appeal, the Superior Court found that his boilerplate claim of sentencing court error would fail to raise a substantial question, and he would be entitled to no relief.  Commonwealth v. Lebron, 895 A.2d 648 (Pa. Super. 2006)(table); Response, Ex. A at 5-6.

his PCRA petition, Petitioner averred that his VOP counsel had been ineffective for failing to file

post-trial motions that would have preserved the challenge to the discretionary aspects of his

VOP sentencing.  On February 21, 2007, the Commonwealth moved to dismiss, and the PCRA

court issued a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907, to which Petitioner

responded.  The PCRA court apparently dismissed the PCRA petition on June 20, 2007, but it

later became evident that the dismissal order was never formally issued or docketed.

Petitioner did not immediately appeal the dismissal of his PCRA petition,

apparently because he did not know of the decision. Through a second PCRA petition filed in

2007, he successfully sought *nunc pro tunc* reinstatement of his right to appeal the PCRA

dismissal, to which the Commonwealth agreed. The right to appeal was reinstated *nunc pro tunc*

on July 16, 2008 and appointed counsel filed a brief on Petitioner's behalf.[6]

---

[6]      In the brief, Petitioner asserted the following issues:

> A. WHETHER VOP COUNSEL WAS INEFFECTIVE FOR FAILING TO
> FILE A MOTION TO RECONSIDER OR MODIFY THE APPELLANT'S
> SENTENCE WHERE IT IS NOT ONLY MANIFESTLY EXCESSIVE BUT
> WAS ALSO INCONSISTENT WITH CERTAIN PROVISIONS OF THE
> SENTENCING CODE AND UNDERMINED THE FUNDAMENTAL
> NORMS OF THE SENTENCING PROCESS?
>
> B.  WHETHER THE TRIAL COURT ERRED BY DISMISSING THE
> APPELLANT'S PCRA PETITION WHERE COUNSEL WAS INEFFECTIVE
> FOR FAILING TO FILE A MOTION TO RECONSIDER A SENTENCE
> THAT WAS NOT ONLY MANIFESTLY EXCESSIVE BUT WAS ALSO
> INCONSISTENT WITH CERTAIN PROVISIONS OF THE SENTENCING
> CODE4 AND UNDERMINED THE FUNDAMENTAL NORMS OF THE
> SENTENCING PROCESS?

We note further, however, that in the Statement of Reasons for Allowance of Appeal portion of the
brief, Petitioner conceded that "THE SENTENCE WAS WITHIN THE STATUTORY LIMITS."  Response, Ex. B
at 9 (caps in original).  Respondent, as a result, notes that Petitioner has previously conceded the only issue he raises
in the instant habeas petition.

By memorandum decision dated February 7, 2011, the Superior Court remanded for the entry on the docket of an order dismissing the 2006 PCRA petition. Without a written, appealable order and entry on the docket dismissing the 2006 PCRA petition, the Superior Court had no jurisdiction. The court further specified that the case needed to be re-assigned to a new judge, since the original judge was no longer on the bench.  Commonwealth v. Lebrom, 24 A.3d 445 (Pa. Super. 2011) (table); Response, Ex. C.

On May 7, 2012, the Honorable Barbara A. McDermott, to whom the matter had been reassigned, entered an Order dismissing the PCRA petition that was filed on August 31, 2006.  On May 9, 2012 an appeal was taken by Petitioner to the Pennsylvania Superior Court. As of the date of this Report and Recommendation, the matter is still pending before the Superior Court.

**B.      CP-51-CR-1105911-2001 and CP-51-CR-1110311-2002.**

Following a jury trial before the Honorable John J. Chiovero in the Court of Common Pleas of Philadelphia County on October 21-23, 2002, Petitioner was found guilty of owning, operating or conducting a chop shop; receiving stolen property; criminal mischief; possessing an instrument of crime; and criminal conspiracy in case number CP-51-CR-1105911-2001.  Sentencing was deferred.[7]

---

[7]      The state courts set forth the following relevant facts:

On October 4, 2001, Police Officer Frank Leaden of the Philadelphia Police Department's Major Crimes auto squad unit received an anonymous tip that two Hispanic males appeared to be removing parts from an automobile in a vacant lot.  Within fifteen minutes of receiving the call, Officer Leaden and his partner, Officer Thomas Evans, arrived at the scene.

When Officer Leaden and his partner arrived at the location identified by the informant, 2900 Leithgow Street, Officer Leaden observed [Petitioner] and Co-defendant Flores removing parts from a purple Honda Accord.  Co-defendant

Flores was seen throwing a bumper into an abandoned yard and [Petitioner] was seen kneeling next to the fender with what appeared to be a rachet in his hand. As a result of his nine years of experience in the unit and the fact that the informant's tip was corroborated by his observations, Officer Leaden believed that [Petitioner and his co-conspirator] were stripping a stolen vehicle.

The officers then got out of their vehicle.  Officer Leaden, with his police badge displayed around his neck, yelled 'Stop, Police'. [Petitioner] and his cohort looked at the officers and ran.  The police officers pursued the men to 2964 North 4th Street.  Officer Leaden went to the front of the property while Officer Evans proceeded to the rear of the property.  The officers next contacted their supervisor, Lieutenant Wilkins, and Detective Bielski and requested their assistance at the scene.

The police secured the outside of the property and had intended to obtain a search warrant when they received information from a neighbor that there was a man on the roof of 2964 North 4th Street.  As a result, Detective Bielski requested the Philadelphia Fire Department to send a ladder truck to the scene to investigate and secure the roof.  When the ladder arrived, Officer Leaden advised the other officers that co-defendant Flores was running on the roof.  Officer Evans and Detective Bielski pursued Flores on the roof and into a second floor window of the property, where they apprehended him in a room on the second floor of the property.

After arresting Flores, the police searched the property for [Petitioner].  They did not search the third floor since it was secured with a locked door.  The first floor area was searched since only a loose piece of dry wall separated the two floors.  [Petitioner] was not found at that time.

After the incident, Detective Bielski prepared a photo array for Officer Leaden's review and he positively identified [Petitioner] as the second male involved in the October 4, 2001 incident.  As a result, an arrest warrant was prepared for [Petitioner].  He was arrested when he attempted to claim one of the vehicles which had been confiscated from the property.

During their search for [Petitioner], the police observed and confiscated numerous tool boxes, an air compressor, car wheels, tire rims and hubcaps, car radios and speakers, other assorted car parts and a glass sun roof [at] 2964 North 4th Street.  The purple Honda Accord that Officers Leaden and Evans observed during their initial call to the scene was towed to the police impound.  The vehicle had been disassembled. . . .

A green Honda station wagon was also confiscated from the scene.  It was the same vehicle that [Petitioner] had attempted to claim when he was arrested. . . .

Two other vehicles were also confiscated from the scene.  They included a Honda and a Toyota.  The Honda's identification numbers had been sanded down and the car was primed and appeared ready to be painted.  None of the identification numbers on the Toyota matched each other.

In addition, on January 17, 2003, Petitioner entered an open plea of guilty before Judge Chiovero on unrelated charges of theft by unlawful taking; criminal mischief; and criminal conspiracy for stealing a 1995 Nissan Maxima on October 6, 2002 in case number CP-51-CR-1110311-2002.  Sentencing was deferred for consolidation with the chop shop case, and other charges were dropped as part of this open plea.

On February 6, 2003, Judge Chiovero sentenced Petitioner on both matters, CP-51-CR-1105911-2001 and CP-51-CR-1110311-2002, which were consolidated.  According to the state court record, with regard to CP-51-CR-1105911-2001 (the "chop shop" case), Petitioner was sentenced to consecutive terms of 3½ to 7 years for owning operating or conducting a chop shop and 2½ to 5 years for receiving stolen property; and concurrent terms of 1 to 2 years for criminal mischief, 2½ to 5 years for possession of an instrument of crime, and 3½ to 7 years for criminal conspiracy.  With regard to CP-51-CR-1110311-2002 (the "Nissan Maxima" case), Petitioner was sentenced to a consecutive term of 2 to 5 years; and concurrent terms of 3½ to 7 years for criminal conspiracy and 1 to 2 years for criminal mischief.  Petitioner's total aggregate sentence, therefore, was 8 to 17 years of imprisonment.

---

The purple Honda Accord had been stolen from Phala Ang.  Ms. Ang had last seen her vehicle at approximately 1:30 am on October 4, 2001 when she parked the car in front of her residence after work.  When she left her vehicle, the car was locked and had no pre-existing damage.

On October 5, 2001, Ms. Ang met the police at the police impound.  She identified the purple Honda Accord as her vehicle.  At that time, she noticed that the car had been stripped, the tires had been removed and the ignition and steering column had been cut.  While at the police impound, Ms. Ang noticed the green Honda station wagon parked next to her vehicle and saw that the tires to her vehicle, as well as her tool box, were in the cargo area of the wagon.

Commonwealth v. Lebron, 902 A.2d 979 (Pa. Super. 2006) (table); Response, Ex. E at 2-4.

Petitioner did not timely file a direct appeal.  On October 29, 2004, however, the PCRA court reinstated his right to file a notice of appeal with respect to both matters, CP-51-CR-1105911-2001 and CP-51-CR-1110311-2002.  By memorandum decision dated April 7, 2006, the Pennsylvania Superior Court affirmed Petitioner's judgment of sentence.  Commonwealth v. Lebron, 902 A.2d 979 (Pa. Super. 2006) (table); Response, Ex. E.  Petitioner did not file a petition for allowance of appeal to the Supreme Court of Pennsylvania.

On April 10, 2007, Petitioner filed a timely petition for collateral review under the Pennsylvania Post Conviction Relief Act ("PCRA") with the assistance of privately-retained counsel concerning both cases.  On August 12, 2008, the PCRA court dismissed the PCRA petition.  Petitioner appealed to the Pennsylvania Superior Court.  In a memorandum filed July 13, 2010, the Superior Court affirmed the PCRA court's dismissal of the PCRA petition.  Commonwealth v. Lebron, 6 A.3d 558 (Pa. Super. 2010) (table); Response, Ex. F.  Petitioner did not seek further review by the Pennsylvania Supreme Court.

**C.    Procedural History Common to All Three Cases.**

Petitioner signed the instant habeas Petition on November 8, 2011 and it was docketed by the Clerk of Court on November 14, 2011.  See Docket No. 1.  On December 27, 2011, Petitioner, pursuant to the November 29, 2011 Order of the Honorable Edmund V. Ludwig, revised his habeas Petition by completing this Court's current standard form of petition and returning it to the Clerk of Court for filing.  See Docket No. 3.  Pursuant to the prison mailbox rule, however, this Court will consider the date of filing of the habeas Petition as November 8, 2011.  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1997) (motion is deemed timely filed on date petitioner gave petition to prison officials to mail).  In his Petition, he seeks

7

reconsideration of his sentence, alleging that the sentencing guidelines cannot be used to increase penalty imposed beyond the statutory minimum.  Petition at 6.

       The case was assigned to the Honorable Edmund V. Ludwig, who referred it for preparation of a Report and Recommendation on January 10, 2012.  On January 19, 2012, the undersigned entered an Order directing that the Clerk of Quarter Sessions/Office of Judicial Support for the Court of Common Pleas of Philadelphia County forward copies of all records, including transcripts of notes of testimony at arraignment, pre-trial and suppression hearings, trial, sentencing, and post-conviction hearings and appeals; all trial and appellate briefs and petitions, all pleadings, and all court opinions of proceedings in connection with this matter.  The state court records pertaining to <u>Commonwealth v. John Lebron</u>, Court of Common Pleas of Philadelphia County, Nos. CP-51-CR-1110311-2002 and CP-51-CR-1105911-2001, were received in chambers of the undersigned on March 20, 2012.

       On April 3, 2012, Respondent filed a Response to Petition for Writ of Habeas Corpus.  Respondent contends that the Petition with respect to MC-51-CR-0444561-2001 is premature as it is still pending in state court on collateral review, and that the case should be dismissed without prejudice and without an evidentiary hearing.  With respect to CP-51-CR-1105911-2001 and CP-51-CR-1110311-2002, Respondent contends that the Petition is time-barred, and that those cases should be dismissed with prejudice and without an evidentiary

hearing.  Having reviewed the documents of record in this case,[8] as well as the entire state court record, we offer this Report and Recommendation.

## II.   <u>DISCUSSION</u> – MC-51-CR-0444561-2001.

### A.   <u>Standard - Exhaustion, Procedural Default and the "Fairly Presented" Doctrine.</u>

It is well established that a prisoner must present all of his claims to a state's intermediate court, as well as to its supreme court, before a district court may entertain a federal petition for habeas corpus.  28 U.S.C. § 2254(b)(1)(A); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 847 (1999); <u>Evans v. Court of Common Pleas, Del. County, Pa.</u>, 959 F.2d 1227, 1230 (3d Cir. 1992).[9]

"The exhaustion requirement ensures that state courts have the first opportunity to review federal constitutional challenges to state convictions and preserves the role of state courts in protecting federally guaranteed rights." <u>Caswell v. Ryan</u>, 953 F.2d 853, 857 (3d Cir.), <u>cert. denied</u>, 504 U.S. 944 (1992).  Absent exceptional circumstances, a federal court may not determine the merits of a habeas corpus petition until the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 3354(b); <u>O'Sullivan</u>, 526 U.S. at 839; <u>Slutzker v. Johnson</u>, 393 F.3d 373, 379 (3d Cir. 2004).  Principles of comity "dictate that when a prisoner

---

[8]     Petitioner has also sent letters to the undersigned dated June 10, 2012, July 9, 2012, and July 18, 2012.  <u>See</u> Docket Nos. 13-15.  In these letters, Petitioner seeks to correct an allegedly incorrect sentence noted on his status sheet as well as his identification on state court records.  These issues were not raised in his habeas Petition and, instead, appear to be issues that Petitioner is either raising with his state institution or issues that should be addressed by the state courts.  In fact, Philadelphia District Attorney John W. Goldsborough has advised Chambers that he has reviewed Petitioner's letters and is presently conferring with the state courts as to Petitioner's allegations of an incorrect sentence and awaiting the return of the state court record in that regard.

[9]     On May 9, 2000, the Pennsylvania Supreme Court issued Order No. 218 that declares that federal habeas petitioners no longer have to appeal to the state supreme court to satisfy the exhaustion requirement.  This order is not to be applied retroactively.  <u>See</u> <u>Wenger v. Frank</u>, 266 F.3d 218, 225 (3d Cir. 2001), <u>cert. denied</u>, 535 U.S. 957 (2002).

alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." O'Sullivan, 526 U.S. at 844-45.

To satisfy the exhaustion requirement, a petitioner must demonstrate that the claim raised in the federal petition was "fairly presented" to the state courts. Duncan v. Henry, 513 U.S. 364, 365 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Petitioner must show that "the claim brought in federal court [is] the substantial equivalent of that presented to the state courts. Both the legal theory and the facts supporting a federal claim must have been submitted to the state courts." Lesko v. Owens, 881 F.2d 44, 50 (3d Cir. 1989) (citations omitted), cert. denied, 493 U.S. 1036 (1990). A claim is not fairly presented if the state court "must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim." Baldwin v. Reese, 541 U.S. 27, 32 (2004). Mere similarity of the federal and state issues is insufficient to prove exhaustion. Duncan, 513 U.S. at 366. The relevant inquiry is whether the petitioner presented in state courts the legal theory and supporting facts asserted in the federal habeas petition. Nara v. Frank, 488 F.3d 187, 198 (3d Cir. 2007); Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001).

However, when the petitioner cannot obtain state court review of his claims because of noncompliance with state procedural rules, the doctrine of procedural default generally bars federal habeas corpus review. Coleman v. Thompson, 501 U.S. 722, 729-32 (1991); Sistrunk v. Vaughn, 96 F.3d 666, 674-75 (3d Cir. 1996). The Supreme Court stated:

> [I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the

10

> claims procedurally barred . . . there is a procedural default for
> purposes of federal habeas regardless of the decision of the last
> state court to which the petitioner actually presented his claims.

Coleman, 501 U.S. at 735 n.1.  "Just as in those cases in which a state prisoner fails to exhaust

state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for

presenting his federal claims has deprived the state courts of an opportunity to address those

claims in the first instance."  Coleman, 501 U.S. at 731-732.  To be beyond federal review, the

procedural default at issue must rest on "adequate and independent" state law grounds.  Johnson

v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004) (citing Harris v. Reed, 489 U.S. 255, 262 (1989)).

"[T]he state rule must have been announced prior to its application in the petitioner's case and

must have been 'firmly established and regularly followed.'"  Abu-Jamal v. Horn, 520 F.3d 272,

287 (3d Cir. 2008) (quoting Fahy v. Horn, 516 F.3d 169, 187 (3d Cir. 2008) (quoting Ford v.

Georgia, 498 U.S. 411, 423-24 (1991))).

      Upon a finding of procedural default, review of a federal habeas petition is barred

unless the habeas petitioner can demonstrate (1) "cause for the default and actual prejudice as a

result of the alleged violation of federal law", or (2) that "failure to consider the claims will result

in a fundamental miscarriage of justice."[10]  Coleman v. Taylor, 501 U.S. 722, 750 (1990);

---

[10]    Petitioner can demonstrate cause for procedural default if he can show that some objective factor
external to the defense impeded or prevented his ability to comply with the state procedural rules.  Caswell, 953 F.2d
at 862.  The cause must be "something that cannot fairly be attributed to the petitioner."  Coleman, 501 U.S. at 753.
While ineffectiveness of counsel may, in some instances, constitute "cause" to excuse procedural default, Murray v.
Carrier, 477 U.S. 478, 488-489 (1986), in order to qualify, the ineffectiveness alleged must arise to an independent
constitutional violation which claim itself must also be presented to state court.  Edwards v. Carrier, 529 U.S. 446
(2000).

      To show prejudice, petitioner must present evidence that this factor did more than merely create a
possibility of prejudice; it must have "worked to [petitioner's] actual and substantial disadvantage."  Murray, 477
U.S. at 494 (emphasis in original) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).  Additionally, the
fundamental miscarriage of justice exception to procedural default is only concerned with "actual" innocence and
petitioner must show that it is more likely than not that no reasonable juror would have convicted him absent the

Peterkin v. Horn, 176 F. Supp. 2d 342, 353 (E.D. Pa. 2001).

**B.      Standard - Exceptions to the Exhaustion Requirement.**

An exception to the exhaustion requirement is made "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." Duckworth v. Serrano, 454 U.S. 1, 3 (1981)(citations omitted); Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  The United States Court of Appeals for the Third Circuit has held that "our case law forecloses a District Court from excusing exhaustion 'unless state law *clearly forecloses* state court review of claims which have not previously been presented to a state court.'" Coady v. Vaughn, 251 F.3d 480, 489 (3d Cir. 2001)(quoting Lines v. Larkins, 208 F.3d 153, 163 (3d Cir. 2000)(emphasis in original)).  There is no evidence that the state court has been or will be ineffective in reviewing Petitioner's claim.

Under limited circumstances, the United States Supreme Court has held that "it is appropriate to stay and abey the federal habeas proceedings while the petitioner exhausts his unexhausted claims in state courts." Rhines v. Weber, 544 U.S. 269, 277-278 (2005).[11]  The

---

claimed error. Schlup v. Delo, 513 U.S. 298, 327 (1995).  The Supreme Court has repeatedly held, however, that the scope of the miscarriage of justice exception is a narrow one. Sawyer v. Whitley, 505 U.S. 333 (1992); McCleskey v. Zant, 499 U.S. 467 (1991); Dugger v. Adams, 489 U.S. 401 (1989).  This exception only applies when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496.  The Supreme Court has suggested that the test for actual innocence is whether there is "a fair probability that, in light of all the evidence, including that to have been . . . wrongly excluded or to have become available only after trial, the trier of the facts would have entertained a reasonable doubt of his guilt." Kuhlmann v. Wilson, 477 U.S. 436, 454-55 n.17 (1986).

[11]      Rhines was decided in the case of a "mixed petition," that is, one containing both exhausted and unexhausted claims. See Rose v. Lundy, 455 U.S. 509, 522 (1982) (describing mixed petitions).  In a subsequent decision, Pace v. DiGuglielmo, 544 U.S. 408 (2005), which did not involve a mixed petition and which was decided on timeliness grounds, the Court discussed in dicta the manner in which the stay and abey procedure might be employed to avoid harsh results preventing federal habeas review.  See Pace, 544 U.S. at 416.

The Court of Appeals for the Third Circuit recently interpreted Pace as permitting the use of the stay and abey procedure in a context outside that of mixed petitions, that is, in the case of a federal petition containing only unexhausted claims, where not even a single claim had yet been presented to the state appellate

Court specifically stated that the court should stay, rather than dismiss, a petition when a petitioner exhibits "good cause for his failure to exhaust [the claims in the federal petition that were not yet exhausted], his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  Id. at 278; Heleva v. Brooks, 581 F.3d 187, 190-92 (3d. Cir. 2009).  In such cases, Rhines directs the court to stay disposition as to exhausted claims contained in the petition and hold the petition in abeyance while petitioner completes the exhaustion process.  Once the petitioner fully exhausts his claims, the district court may then lift the stay and review the petition.[12]  Rhines, 544 U.S. at 277-278.

### C.   Recommendation as to MC-51-CR-0444561-2001.

Petitioner must first exhaust his remedies in the state court system before bringing his claims to this Court.  "A federal court is allowed under 28 U.S.C. § 2254(b)(1)(A) to grant a state prisoner's habeas petition only if the petitioner has exhausted all available state remedies. In order to satisfy the exhaustion requirement, a federal habeas claim must have been 'fairly presented' to the state courts. . . .  This means that a petitioner must 'present a federal claim's

---

court.  In Heleva v. Brooks, 581 F.3d 187 (3d Cir. 14, 2009), the court held that the district court erred in assuming that the stay and abey procedure would not be available to a petition consisting of only unexhausted claims, e.g., a petition that was not "mixed."  The court believed that "a distinction between mixed and non-mixed petitions would make no sense in the context of granting a stay to avoid penalizing a prisoner for reasonable confusion about state court filing requirements."  Id. at 191.  The dissent objected that the majority's holding employed dicta from Pace to overrule, sub silentio, the 1982 Rose v. Lundy decision that had required dismissal of petitions containing only unexhausted claims, expressing doubt that this would have been the Supreme Court's intention in Pace.  See Heleva, 581 F.3d at 196-197 (Chagares, J., dissenting).

[12]     The United States Court of Appeals for the Third Circuit has provided that thirty days is a reasonable length of time to permit the filing of the post-conviction petition, and that petitioner should be given another thirty-day reasonable interval after the denial of that relief to return to federal court.  Crews v. Horn, 360 F.3d 146 (3d Cir. 2004).  In the event that a petitioner fails to meet either time limit, however, the stay should be vacated nunc pro tunc.  Id. at 154.

factual and legal substance to the state courts in a manner that puts them on notice that a federal

claim is being asserted.'" Bronshtein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005) (internal

citations omitted).  Petitioner has not fully exhausted his state court remedies as to his claim

because the appeal of his PCRA dismissal is still pending before the Pennsylvania Superior

Court.  Because it is evident that Petitioner has not fully exhausted his state court remedies

sought in this Petition, this Court should "stay its hand" and dismiss, without prejudice, the

instant Petition for Writ of Habeas Corpus as unexhausted to allow Petitioner to continue to

exhaust his claims in state court.[13]  Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

---

[13]      This Court further finds persuasive the arguments set forth by Respondent in his brief, which are
summarized as follows:

> The ineffectiveness claim in the pending Superior Court appeal of the dismissal
> of Petitioner's PCRA petition is not included in the present federal habeas
> petition.  In fact, the sole claim in this habeas petition, that petitioner's sentence
> is illegal as beyond the statutory maximum, has never been raised in the state
> portion of the Municipal Court case as a discrete issue.  Further, Petitioner
> actually conceded that his sentence was within statutory limits in his appellate
> brief to the Superior Court.  See Response, Ex. B at 9.  As correctly noted by
> Respondent, if this portion of the federal habeas Petition continues at this time,
> the opportunity for Petitioner to obtain federal review of the pending and
> unexhausted ineffectiveness claim in his PCRA will be forever lost.

> We concur that dismissal without prejudice of this portion of the federal habeas
> petition would preserve Petitioner's right to file another federal habeas petition
> concerning the Municipal Court case within AEDPA's statute of limitations (28
> U.S.C. § 2244(d)), after Petitioner has completed a full round of collateral
> review and appeal in the state court system, if he wishes to pursue federal review
> at that time. His federal habeas filing deadline is currently extended or tolled
> until after his state proceeding is finished, and he will have more time under this
> approach to re-file in federal court than he would have under the Rhines
> procedure.

> The claim in the current federal habeas Petition is that his sentence is beyond the
> statutory maximum in the sentencing code.  Petitioner did not raise that claim
> during either the direct appeal or the PCRA proceeding in this case.  A claim that
> a sentence is illegal is not the same as a claim that the court abused its sentencing
> discretion.  Nor is it the same as the claim (in his now-remanded 2008 PCRA
> appeal) that VOP counsel was ineffective for failing to file a post-sentence
> motion preserving the sentencing-discretion issue.  It is, however, related.

Moreover, we concur with Respondent that a stay of proceedings with respect to instant Petition should not be permitted.  First and foremost, we note that Petitioner has not filed a motion to stay, nor has he ever requested that this Court stay proceedings with respect to his Petition.  Nevertheless, when we apply the <u>Rhines</u> factors to this matter, we find further support that a stay should not be permitted.  There does not appear to be good cause for having not presented previously any presently unexhausted potential claim to the state courts.  Petitioner has not exhausted his state remedies merely because he filed his federal habeas petition while his state proceedings are still ongoing. This does not constitute "good cause."

As calculated by Respondent, there likewise does not appear to be any danger of any future habeas petition being time-barred if the current Petition is dismissed without prejudice.  Direct appeal became final on February 19, 2006, when petitioner's 30-day period for petitioning the Pennsylvania State Supreme Court for allowance of appeal expired.  On that date, both his one-year state period for filing a timely PCRA petition, and his one-year federal statute of limitations for filing a federal habeas petition, began to run. 28 U.S.C. § 2244(d)(1)(a); 42

---

If petitioner achieves review of his claim that counsel was ineffective for waiving the discretionary aspects of sentencing claim, the prejudice analysis of the ineffectiveness claim will include a review of the merit (or lack thereof) of the discretionary sentencing claim. That may also encompass sentence legality, which is often a preliminary part of analyzing whether a sentencing court's discretion was abused. Therefore, even though the claim stated in habeas is not pending in state court, there is a distinct possibility that the state court will rule upon it in the pending PCRA appeal just as, when discussing this claim, his PCRA appellate counsel mentioned the issue.

If petitioner were to continue in his present federal action while his unexhausted PCRA claim of ineffective assistance is being reviewed by the state courts, he will give up his right to federal review of that claim. If the Municipal Court portion of the present habeas petition continues now and is eventually denied with prejudice, any subsequent federal habeas petition concerning this aspect of the case would be considered successive.

<u>See</u> Response at 4-5.

15

Pa.C.S. § 9545(b)(3).  Petitioner timely filed his PCRA petition on August 31, 2006, which

stopped the running of the habeas one-year statute of limitations, leaving 172 days left to run

after the PCRA petition and any state appeals from it are no longer pending.  A stay of the

Petition would actually result in less time for Petitioner to return to federal court after his

state-court proceedings on this matter are resolved.  As noted above, the United States Court of

Appeals for the Third Circuit has provided that a petitioner should be given a thirty-day

reasonable interval after the denial of PCRA relief to return to federal court.  Crews v. Horn, 360

F.3d 146 (3d Cir. 2004).  Accordingly, we conclude that it would not be proper for the Court to

grant a stay of the Petition.

III.  **DISCUSSION – CP-51-CR-1105911-2001 and CP-51-CR-1110311-2002.**

A.  **The Federal Habeas Corpus Petition at Issue is Statutorily Time-Barred.**

Petitioner's case must be decided pursuant to the terms of the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), which was enacted April 24, 1996.  Pub.L.

104-132, 110 Stat. 1214.  Section 104(2) of the AEDPA amended 42 U.S.C. section 2254, the

statute under which this Petition was filed, requires that federal courts give greater deference to a

state court's legal determinations.  The AEDPA also amended 28 U.S.C. section 2244, to require

that a strict one-year period of limitation shall apply to an application for a writ of habeas corpus

by a person in custody pursuant to the judgment of a state court.[14]  However, if direct review of a

---

[14]  28 U.S.C. section 2244 requires that:

(d)(1)  A 1-year period of limitation shall apply to an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a State court.
The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for

criminal conviction ended prior to the AEDPA's effective date, a prisoner has one year

subsequent to the April 24, 1996 effective date to properly file a habeas action.  Burns v. Morton,

134 F.3d 109, 111 (3d Cir. 1998).  In this case, the applicable starting point to examine the

limitation period is the latest date on which the judgment of sentence became final, either by the

conclusion of direct review or the expiration of the time for seeking such review.  See 28 U.S.C.

§ 2244(d)(1).

        Petitioner's judgment of sentence became final on May 7, 2006, when his time for

filing a petition for allowance of appeal with the Pennsylvania Supreme Court expired.  See 28

U.S.C. § 2244(d)(1)(A); 42 Pa. C.S.A. § 9545(b)(3); Pa. R.A.P. 1113(a) (stating notice of appeal

must be filed within 30 days of order sought to be appealed).  Accordingly, the one-year time

limit for Petitioner to timely file a federal Petition for Writ of Habeas Corpus began on May 7,

2006.  In the absence of any statutory or equitable tolling, Petitioner, therefore, would have been

required to file his federal habeas petition on or before May 7, 2007.  We note, however, that

because the AEDPA's one-year statute of limitations is subject to both statutory and equitable

---

seeking such review;

(B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

tolling, we must examine whether the instant Petition may be considered timely filed under either

concept.  28 U.S.C. § 2244(d) (enumerating statutory tolling provisions); Merritt v. Blaine, 326

F.3d 157, 161 (3d Cir.), cert. denied, 540 U.S. 921 (2003) (holding AEDPA's time limit is

subject to the doctrine of equitable tolling, a judicially crafted exception).

     **B.**     **The Federal Habeas Corpus Petition at Issue is Not Eligible for Statutory or Equitable Tolling**.

     The AEDPA's one-year statute of limitations is subject to both statutory and

equitable tolling.  28 U.S.C. § 2244(d) (enumerating statutory tolling provisions); Merritt v.

Blaine, 326 F.3d 157, 161 (3d Cir.), cert. denied, 540 U.S. 921 (2003) (holding AEDPA's time

limit is subject to the doctrine of equitable tolling, a judicially crafted exception).

     1.  Statutory Tolling

     We note initially that Petitioner is not entitled to a new, extended deadline for the

AEDPA's limitation period pursuant to 28 U.S.C. § 2244(d)(1).  Petitioner does not allege, nor is

there evidence to demonstrate that state action prevented the timely filing of his habeas action.

28 U.S.C. § 2244(d)(1)(B).  Second, the claims alleged in the Petition do not rely on a new rule

of federal constitutional law of retroactive application.  28 U.S.C. § 2244(d)(1)(C).  Finally,

Petitioner has not made a showing that the factual predicate of his claims was not discoverable

through the exercise of due diligence long ago. 28 U.S.C. § 2244(d)(1)(D).

     With respect to Petitioner's PCRA filing, we note that the limitations period will

be statutorily tolled for the time during which a "properly filed" application for state post-

conviction or other collateral review is pending.  See 28 U.S.C. § 2244(d)(2).  However, if a

PCRA petition is not timely filed, it is not considered properly filed in order to toll the AEDPA

one-year statutory time period.  Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005).

       Petitioner's PCRA petition was filed on April 10, 2007, during the running of the one-year habeas clock.  Because 338 days of the one-year time period had elapsed, the clock was tolled with approximately 27 days remaining before expiration.  See Fed.R.Civ.P. 6(a)(1).  On July 13, 2010, Petitioner's PCRA petition was no longer pending when the Pennsylvania Superior Court dismissed it.  Commonwealth v. Lebron, 6 A.3d 558 (Pa. Super. 2010) (table); Response, Ex. F.  As a result, the one-year statutory period resumed on July 13, 2010, and expired 27 days later on August 9, 2010.[15]  The present Petition was filed on November 8, 2011, approximately one year and three months after the period of limitation expired.  It is statutorily time-barred.

       2. Equitable Tolling

       This Court must next examine whether the AEDPA statute of limitations should be equitably tolled to consider the Petition timely filed.  Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir. 2002), cert. denied, 540 U.S. 826 (2003)(citing Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 617-618 (3d Cir. 1998)(citation omitted).  The limitation period will be equitably tolled when the principles of equity would make the rigid application of a limitation period unfair.  Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).

       Courts must be sparing in their use of equitable tolling.  Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999).  In fact, the United States Court of Appeals

---

[15]    Even if we were to include the thirty days that Petitioner presumably would have had for seeking state supreme court review, his petition would still be untimely as it would have had to be filed by September 8, 2010.

for the Third Circuit has held that equitable tolling is proper "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998)(citation omitted).  "The two general requirements for equitable tolling: (1) that 'the Petitioner has in some extraordinary way been prevented from asserting his or her rights;' and (2) that the petitioner has shown that 'he or she exercised reasonable diligence in investigating and bringing [the] claims.'" Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003), citing Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).  Mere excusable neglect is not sufficient.  Miller, 145 F.3d at 618 (quoting New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d Cir. 1997) and citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)).

The Third Circuit has set forth the following three circumstances in which equitable tolling is permitted: (1) if the [Respondent] has actively misled the [Petitioner]; (2) if the [Petitioner] has in some extraordinary way been prevented from asserting his rights, or (3) if the [Petitioner] has timely asserted his rights mistakenly in the wrong forum.  Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001), cert. denied, 534 U.S. 944 (2001)(citing Jones, 195 F.3d at 159 (citations omitted)).  "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling."  Fahy, 240 F.3d at 244.  The habeas petitioner bears the burden of demonstrating both his entitlement to equitable tolling and his due diligence.  Pace, 544 U.S. at 418; Cooper v. Price, 82 Fed.Appx. 258, 260 (3d Cir. 2003); Brown v. Cuyler, 669 F.2d 155, 158 (3d Cir. 1982); United States v. Soto, 159 F.Supp.2d 39, 45 (E.D. Pa. 2001) (Van Antwerpen, J.).

20

In this case, we note at the outset, that Petitioner has failed to allege that some extraordinary circumstance prevented him from asserting his rights in a timely habeas corpus petition and has failed to demonstrate that he exercised reasonable diligence in investigating and bringing his claims.  Merritt, 326 F.3d at 168.  In fact, Petitioner filed his first federal habeas corpus petition approximately five years and six months after his conviction became final.

Moreover, we note that in determining whether extraordinary circumstances exist to warrant the application of equitable tolling, this Court must also examine Petitioner's due diligence in pursuing the matter under the specific circumstances he faced.  Traub v. Folio, No. 04-386, 2004 WL 2252115, at *2 (E.D. Pa. Oct. 5, 2004) (citing Schleuter v. Varner, 384 F.3d 69 (3d Cir. 2004))(affirming dismissal of habeas petition as time barred and not entitled to equitable tolling because lengthy periods of time had elapsed following his conviction before he sought relief).  It is Petitioner's burden to show that he acted with reasonable diligence and that extraordinary circumstances caused his petition to be untimely. Id.

Under the circumstances of this case, Petitioner did not act in a reasonably diligent fashion because a reasonably diligent petitioner would have acted promptly to preserve his rights not only in the state court, but also in *this* Court.  Petitioner fails to allege any steps that he took to timely file the instant federal habeas petition.  None of the circumstances which warrant equitable tolling apply in this case to render the instant Petition timely.  Fahy, 240 F.3d at 244.  Accordingly, the Petition as it relates to CP-51-CR-1105911-2001 and CP-51-CR-1110311-2002 is statutorily time-barred.

IV.     **CERTIFICATE OF APPEALABILITY**.

When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability should issue only if (1) the petition states a valid claim for the denial of a constitutional right, and (2) reasonable jurists would find it debatable whether the district court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000). In this case, reasonable jurists could not disagree that the claim in the instant Petition as it relates to MC-51-CR-0444561-2001 is unexhausted and premature. Further, reasonable jurists could not disagree that the Petition as it relates to CP-51-CR-1105911-2001 and CP-51-CR-1110311-2002 is time-barred. It is statutorily barred, and neither statutory nor equitable tolling apply to this Petition.

For all of the above reasons, I make the following:

## RECOMMENDATION

AND NOW, this    10th    day of August, 2012, IT IS RESPECTFULLY RECOMMENDED that the instant Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Docket No. 1) and revised Petition for Writ of Habeas Corpus (Docket No. 3) as they relate to MC-51-CR-0444561-2001 should be DENIED and DISMISSED without prejudice.

IT IS FURTHER RESPECTFULLY RECOMMENDED that the instant Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Docket No. 1) and revised Petition for Writ of Habeas Corpus (Docket No. 3) as they relate to CP-51-CR-1105911-2001 and CP-51-CR-1110311-2002 should be DENIED with prejudice and DISMISSED without an evidentiary hearing.

IT IS FURTHER RESPECTFULLY RECOMMENDED that there is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation.  See Local Civ. Rule 72.1.  Failure to timely file objections may constitute a waiver of any appellate rights.

BY THE COURT:


 /s/ Henry S. Perkin_____
HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE